UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

| | |
|---|---|
| CHARLES E. AND DOROTHY A. STENNIS, | CASE NO. 09-50723-NPO |
| DEBTORS. | CHAPTER 13 |
| JOE MCSWAIN, FELECIA HONEYCUTT (SUBSTITUTED FOR DOROTHY LEE RODGERS), AND NATHAN GILMORE | PLAINTIFFS |
| V. | ADV. PROC. NO. 09-05054-NPO |
| CHARLES E. STENNIS | DEFENDANT |

## MEMORANDUM OPINION DENYING COMPLAINT

On April 15, 2010, this matter came on for trial (the "Trial") on the Complaint Objecting to Dischargeability of Debt or in the Alternative, to the Discharge of the Debtor (the "Complaint") (Adv. Dkt. No. 1), filed by Joe McSwain, Dorothy Lee Rodgers,[1] and Nathan Gilmore (collectively, the "Plaintiffs"), and the Response to Complaint Objecting to Dischargeability of Debt or in the Alternative, to the Discharge of the Debtor (the "Answer") (Adv. Dkt. No. 2), filed by the Defendant, Charles E. Stennis ("Mr. Stennis") and Dorothy A. Stennis ("Mrs. Stennis") in the above-styled adversary proceeding (the "Adversary"). At the Trial, George C. Nicols represented the Plaintiffs, and Tylvester O. Goss represented Mr. Stennis. The Court, having considered the pleadings and the testimony and evidence presented at Trial, finds that the relief requested in the Complaint is not well-taken and should be denied. Specifically, the Court finds as follows:[2]

---

[1] By order of this Court (Adv. Dkt. No. 16), Felicia Honeycutt was substituted for Dorothy Lee Rodgers as a Plaintiff on April 9, 2010.

[2] The following constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

## I. Jurisdiction

This Court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This matter is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(I). Notice of the Trial was proper under the circumstances.

## II. Procedural History

### A. The Circuit Court Proceeding in Choctaw County, Alabama

According to the testimony and evidence presented at the Trial, the Plaintiffs claim an heirship interest in certain real property (the "Property") in Choctaw County, Alabama, which is planted in trees. The Plaintiffs assert that in 2001, Mr. Stennis wilfully and maliciously harvested trees from the Property without authority resulting in damages. The Plaintiffs sued Mr. Stennis and Stennis Logging, Inc.[3] in the Circuit Court in Choctaw County, Alabama (the "Alabama State Court Case").[4] Mr. Stennis represented himself in the Alabama State Court Case. In 2003, the Plaintiffs were awarded $80,000 in the Alabama State Court Case. The judgment from the Alabama State Court Case (the "Foreign Judgment")[5] was enrolled in 2008, in Lauderdale County, Mississippi for $120,800 with an interest rate of 12% per annum ("Enrollment of Foreign Judgment").[6]

---

[3] According to the schedules filed by Mr. Stennis and and Mrs. Stennis, they jointly own all of the stock in the corporation called Stennis Logging, Inc. To the extent that Stennis Logging, Inc. is a separate legal entity, this Opinion has no effect on that legal entity.

[4] The Complaint in the Alabama State Court Case was entered into evidence as both Tr. Ex. P-1 and D-5.

[5] Tr. Ex. P-3 and D-6.

[6] Tr. Ex. P-4.

**B. Bankruptcy Proceedings**

On April 10, 2009, Mr. Stennis and Mrs. Stennis filed a voluntary petition for protection under chapter 13 of the United States Bankruptcy Code. On July 20, 2009, the Plaintiffs filed the Complaint, in which they request that the debt be declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)[7], § 523(a)(6), or alternatively, that Mr. Stennis be denied discharge pursuant to § 727(a)(2). The Complaint references the Alabama State Court Case, the Foreign Judgment, and the Enrollment of the Foreign Judgment.

### III. Facts

Three witnesses testified at the Trial before this Court. Ann Rodgers ("Ms. Rodgers") and Joe McSwain ("Mr. McSwain") testified for the Plaintiffs. Mr. Stennis testified on his own behalf. The following facts were gathered from the testimony at the Trial.[8]

**A. Testimony of Mr. Stennis**

Mr. Stennis testified that he had been in the logging business for 27 years. He explained that he knew Ms. Rodgers because she owned a barbeque restaurant that he frequented over the years. Mr. Stennis stated that Ms. Rodgers approached him about cutting some timber on the Property. Mr. Stennis and Ms. Rodgers went to the Property together so that Mr. Stennis could evaluate the job. He stated that Ms. Rodgers was in a hurry for him to cut the timber because she was in need of

---

[7] Hereinafter all code sections refer to the United States Bankruptcy Code located at title 11 of the United States Code unless otherwise noted.
   While the Complaint asserts a claim under § 523(a)(2), it appears that the Plaintiffs abandoned that claim as it was not discussed in the Amended Pretrial Order, the Trial Brief of Plaintiffs (Adv. Dkt. No. 15), or the Plaintiffs' Proposed Findings of Fact and Conclusions of Law (Adv. Dkt. No. 20), nor was it developed at the Trial. To the extent such relief was requested, the Court denies same for failure to prosecute.

[8] This Memorandum Opinion does not discuss the testimony in the order the witnesses appeared at the Trial.

money, but that he had explained to her that he had to finish first his pending cutting job. Mr. Stennis also said that Ms. Rodgers called him on the telephone while he was still engaged on the same cutting job to see when he would be there to cut her timber, again reiterating her need for money. He testified that during that telephone conversation, they agreed that he would come and cut trees on the Property as soon as he completed his pending job.

Mr. Stennis testified that he cut timber on approximately 3 acres of the 130 acres of Property. He stated that he had cut one full day and had started cutting the second morning, when Mr. McSwain appeared and demanded to know who had given him permission to cut the timber. Mr. Stennis told Mr. McSwain that Ms. Rodgers had asked him to cut the timber. Mr. McSwain was very upset and wanted Mr. Stennis to go with him to Ms. Rodgers's house to confirm Mr. Stennis's account. Ms. Rodgers, however, denied giving Mr. Stennis permission to cut the timber.

Mr. Stennis stated that he and Mr. McSwain had lunch together that same day and discussed the situation. He told Mr. McSwain that he would be happy to pay him the money he received from the sawmill for the cut timber. Later, when Mr. Stennis tried to pay the Plaintiffs the money he received from the sawmill for the cut timber, the money was refused.

The Plaintiffs filed suit against Mr. Stennis, who represented himself in the Alabama State Court Case. He said that he did not think he needed a lawyer since he was more than happy to pay the Plaintiffs the $9,100[9] he had received from the sawmill for the timber. Mr. Stennis stated that an appraiser hired by the Plaintiffs valued the timber Mr. Stennis cut at $12,000. Mr. Stennis explained that he did not testify in the Alabama State Court Case, nor did he consent to the Foreign Judgment in the amount of $80,000.

---

[9] The Amended Pretrial Order states the amount was $9,300 (Adv. Dkt. No. 17, p. 5).

Mr. Stennis admitted that he knew the Property was "heir property" and testified that he had explained to Ms. Rodgers that she would need to pay the other heirs their share of the proceeds from the timber. Mr. Stennis also admitted that when he cut the timber on the Property in 2001, he had only a verbal agreement with Ms. Rodgers. He stated that he does not cut timber without a written contract anymore after his experience with the Plaintiffs.

Throughout his testimony, Mr. Stennis demonstrated to the Court that he believed that he had permission from Ms. Rodgers to cut the timber on the Property. Mr. Stennis also demonstrated to the Court that he never intended any injury to the Plaintiffs or the Property. The Court found the testimony of Mr. Stennis to be credible.

**B. Testimony of Ms. Rodgers**

Ms. Rodgers testified that she lives in Alabama, is a cousin of Mr. McSwain, and claimed an heirship interest in the Property. She stated that she knew Mr. Stennis to be a logger in the area and contacted him to appraise the timber on the Property. She admitted accompanying Mr. Stennis to the Property to look at the timber, but she claimed that she never heard from Mr. Stennis again until after the timber was cut when Mr. McSwain brought him to her house to ask her if she had given Mr. Stennis permission to cut the timber. She denied giving Mr. Stennis permission to cut the timber, asserting to the Court that she understood she lacked the authority to do so. On cross-examination, however, Ms. Rodgers was not able to explain satisfactorily if she had authority to have the timber on the Property appraised. At no time in her testimony did Ms. Rodgers offer a credible explanation as to why she wanted the timber appraised. She did admit that Mr. Stennis offered her the money from the sale of the timber but that she had refused to accept such payment. The Court found the Ms. Rodgers's explanation of events lacked consistency and that her testimony lacked credibility.

### C. Testimony of Mr. McSwain

Mr. McSwain testified that he lives in New Orleans, Louisiana. He claimed an heirship interest in the Property and serves as the "administrator" over the Property, which is used primarily for growing timber and hunting. Mr. McSwain explained that he received a call from a cousin in Alabama inquiring about the cutting of timber on the Property. Since Mr. McSwain claimed he had not authorized the cutting of any timber, he drove from New Orleans to the Property that day.

Upon reaching the Property, he demanded to know who had given Mr. Stennis permission to cut the timber. Mr. McSwain admitted two times while under oath that he had threatened to "kill everyone down there" when he discovered that the timber was being cut. He admitted to taking Mr. Stennis to Ms. Rodgers's house to ask her if she had given him permission to cut of the timber. Mr. McSwain testified that Ms. Rodgers denied giving Mr. Stennis permission to cut the timber. Mr. McSwain further admitted that no one testified in the Alabama State Court Case. He asserted that the Alabama State Court Judge established the $80,000 amount of the Foreign Judgment on his own.

The Court found the testimony of Mr. McSwain to be credible. The Court also found Mr. McSwain to be menacing at times and believes that Mr. McSwain threatened "to kill" the logging workers on the Property when he discovered Mr. Stennis cutting the timber on the Property. The Court believes that Mr. McSwain's anger over discovering the cutting of the timber may have caused Ms. Rodgers to deny giving Mr. Stennis permission to cut, when, in fact, she had.

### IV. Issue

At issue before this Court is whether Mr. Stennis's cutting of the timber on the Property created a debt that should be declared nondischargeable pursuant to 11 U.S.C. § 523(a)(6), or alternatively, whether Mr. Stennis should be denied a discharge pursuant to § 727(a)(2).

## V. Discussion

### A. Section 727(a)(2)

In the Complaint (Adv. Dkt. No. 1, para X), the Plaintiffs assert that Mr. Stennis is not entitled to a discharge pursuant to § 727(a)(2). While § 727 is listed as a statute relied on by the Plaintiffs in the Amended Pretrial Order (Adv. Dkt. No. 17, p. 3), the Plaintiffs made only vague reference in the Amended Pretrial Order, and made no argument in the Trial Brief of Plaintiffs (Adv. Dkt. No. 15) or at Trial regarding the application of § 727. As such, the Court finds that the claim that Mr. Stennis is not entitled to a discharge under § 727(a)(2) should be denied for failure to prosecute.

Alternatively, the Court denies the claim based on its lack of merit. Section 727(a)(2) states as follows:

> (a) The court shall grant the debtor a discharge, unless –
> * * *
>   (2) the debtor, with intent to hinder, delay, or defraud a creditor, or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed –
>
>> (A) property of the debtor, within one year before the date of the filing of the petition; or
>>
>> (B) property of the estate, after the date of the filing of the petition[.]
>
> §727(a)(2).

There are no facts before the Court which would indicate that Mr. Stennis had any intent "to hinder, delay, or defraud a creditor or an officer of the estate." Further, there are no facts before the Court that Mr. Stennis has transferred, removed, destroyed, mutilated, or concealed" any of his property within one year prior to filing his petition, or any estate property after filing his petition, or

that he permitted such to occur. The record simply provides no basis for denying Mr. Stennis a discharge pursuant to § 727(a)(2).

### B. Section 523(a)(6)

Next, the Plaintiffs assert that the debt created by the Foreign Judgment is nondischargeable under § 523(a)(6) because the debt arose from a willful and malicious injury. Section 523(a)(6) provides as follows:

> (a) A discharge under section . . . 1328(b) of this title does not discharge an individual debtor from any debt –
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

Id.

#### 1. Alabama State Court Case Offers No Collateral Estoppel Effect

In the Amended Pretrial Order (Adv. Dkt. No. 17), the Plaintiffs set forth as an issue for trial whether the Alabama State Court Case and the Foreign Judgment which resulted therefrom collaterally estop the litigation in this Court of whether the debt arising from Mr. Stennis's cutting of the trees is dischargeable in bankruptcy. The Plaintiffs seem to argue that the Foreign Judgment could not have been entered without a finding by the Alabama State Court that Mr. Stennis' actions were willful and malicious.

The Court notes that the Foreign Judgment was not appealed and became final. This Court, therefore, is bound by the *Rooker-Feldman* doctrine,[10] and it will not litigate again what is a final

---

[10] Under that doctrine, '[w]hen issues raised in a federal court are 'inextricably intertwined' with a state [court] judgment and the court is 'in essence being called upon to review the state-court decision,' the court lacks subject matter jurisdiction to conduct such a review." Davis v. Bayless, 70 F.3d 367, 375-376 (5th Cir. 1995)(citing United States v. Shepherd, 23 F.3d 923, 924 (5th Cir. 1994); *see also* District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (U.S. 1983); Rooker v. Fidelity Trust, 263 U.S. 413 (U.S. 1923)).

judgment from a state court proceeding. Collateral estoppel, however, cannot apply to preclude the litigation of issues necessary for a determination of dischargeability under § 523(a)(6). In other words, state court proceedings do not preclude a bankruptcy court from making an independent determination as to the elements required for determining dischargeability under § 523(a)(6).[11]

In this case, there is no way for this Court to determine, based on the scant record from the Alabama State Court Case, whether the Alabama State Court used the identical standards as those under § 523(a)(6) for a willful and malicious injury to another entity or to the property of another entity. The Foreign Judgment states that the Alabama State Court "considered the testimony presented[] and the stipulation of the parties." The record before this Court, however, includes no transcript, exhibits, or findings of fact from the Alabama State Court Case. Therefore, the record includes nothing on which this Court can ascertain what the Alabama State Court relied on in entering the Foreign Judgment. Accordingly, the Foreign Judgment has no collateral estoppel value in this proceeding as to whether the debt created thereby is nondischargeable.

### 2. Provisions of § 523(a)(6) Do Not Apply

A creditor seeking to deny a debtor the discharge of a debt pursuant to § 523(a)(6) must prove by a preponderance of the evidence that the debt is not dischargeable. Grogan v. Garner, 498 U.S. 279, 284 n. 11 (1991); RecoverEdge L.P. v. Pentecost, 44 F.3d 1284, 1292 (5th Cir. 1995). The U.S. Supreme Court in Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998) states that "[t]he word 'willful' in

---

[11] See Caton v. Trudeau (In re Caton), 157 F.3d 1026, 1028 (5th Cir. 1998) (collateral estoppel applies in dischargeability proceedings but the bankruptcy court retains exclusive jurisdiction to determine whether a debt is dischargeable); Gupta v. Eastern Idaho Tumor Institute, Inc. (In re Gupta), 394 F.3d 347, 349-50 (5th Cir. 2004)(bankruptcy court may apply collateral estoppel to preclude relitigation of findings relevant to dischargeability, and ultimate determination of dischargeability is a federal question.)

(a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional *act* that leads to injury." The Kawaauhau Court further held that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." Id. at 63.

The Fifth Circuit has interpreted § 523(a)(6) on an number of occasions since Kawaauhau. In Miller v. J.D. Abrams Inc. (In re Miller), 156 F.3d 598, 606 (5th Cir. 1998), the Fifth Circuit held that "an injury is "willful and malicious' where there is either an objective substantial certainty of harm or a subjective motive to cause harm." The Miller Court in defining 'malicious' rejected that it meant an act without just cause or excuse. Id. at 605-606. Instead, it adopted the "implied malice standard" and defined 'malicious' as an act done with the "actual intent to cause injury." Id. at 606. The court observed that this definition of 'malicious' is synonymous with the definition of 'willful.' Id. Thus, it found the "treatment of the phrase as a collective concept is sensible given the Supreme Court's emphasis on the fact that the word they modify is 'injury.'" Id.; *see also* Raspanti v. Keaty (In re Keaty), 397 F.3d 264, 270 (5th Cir. 2005).

Later, in Williams v. IBEW Local 520 (In re Williams), 337 F.3d 504, 509 (5th Cir. 2003), the Fifth Circuit found that the "test for willful and malicious injury under Section 523(a)(6), thus is condensed into a single inquiry of whether there exists 'either an objective substantial certainty of harm or a subjective motive to cause harm' on the part of the debtor. [Kawaauhau v. Geiger, 523 U.S. 57, 61-62 (1998)]. *See also* Texas v. Walker, 142 F.3d 813, 823 (5th Cir. 1998) (stating "for willfulness and malice to prevent discharge under Section 523(a)(6), the debtor must have intended the actual injury that resulted. . . . Intent to injure may be established by showing that the debtor intentionally took action that necessarily caused, or was substantially certain to cause, the injury.")

The Court must, therefore, determine whether Mr. Stennis's actions demonstrated an objective substantial certainty to cause harm or a subjective motive to cause harm to the Plaintiffs or to the Property. The credible evidence presented to this Court shows that Mr. Stennis reasonably believed that he had permission from Ms. Rodgers to cut the timber on the Property. While it may have been wiser on Mr. Stennis's part to obtain the written permission of all parties with interest in the Property before cutting the timber, the fact that he failed to do so evidences negligence on his part, at most – but not malice. Given Mr. Stennis's reasonable belief that he had permission to cut the timber on the Property, his actions in doing so evidence neither an objective substantial certainty of harm nor a subjective intent to cause harm. Accordingly, the Plaintiffs have not met their burden to prove by a preponderance of the evidence that the debt is not dischargeable under § 523(a)(6). Grogan v. Garner, 498 U.S. 279, 284 n. 11 (1991); RecoverEdge L.P. v. Pentecost, 44 F.3d 1284, 1292 (5th Cir. 1995).

## VI. Conclusion

Based on the foregoing, the Court finds that the Complaint Objecting to Dischargeability of Debt or in the Alternative, to the Discharge of the Debtor, is not well-taken and should be denied. A separate order consistent with this opinion will be entered in accordance with F.R.B.P. 7054 and 9021.